63 Cal.Rptr. 668]

[Civ. No. 30588.   Second Dist., Div. Two.   Nov. 15, 1967.]

JOHN W. SPELLMAN et al., Plaintiffs and Appellants, v. ESTHER E. DIXON, Defendant and Respondent.

Richard S. Miller and Lawson M. Brown for Plaintiffs and Appellants.

White, Oberhansley & Fleming and David W. Fleming for Defendant and Respondent.

ROTH, P. J.—Appellants appeal from a judgment denying them specific performance or money damages for an alleged breach of contract to convey real property.

Respondent, an 82-year-old widow, was the owner of certain real property in Reseda. On May 24, 1961, appellant paid respondent $1,350 outside of escrow and the parties then executed escrow instructions for the sale and purchase of respondent's property for the sum of $40,000, $30,000 of which was to be subordinated to a first deed of trust "in form furnished by the title company. and upon terms and conditions approved by Buyers and Seller, to be furnished to the escrow."

Conditions provided for including rezoning of the property, were to occur or be performed on or before November 30, 1961, "but . . . if said conditions had not been complied with by that time, then the escrow agent was nevertheless to complete said escrow as soon as the conditions (except as to time) had been complied with . . . ." Appellant John W. Spellman was and had been for many years a licensed real estate broker. No rezoning having occurred prior to the original date of escrow termination, John persuaded respondent to extend the original expiration date to October 10, 1962. John admitted that at the time he obtained this latter extension the value of the property was in the "neighborhood of $55.000."

On June 5, 1962, respondent repudiated and terminated the escrow and offered to return the money and all things of value she had received from appellants. On August 8, 1962, appellants advised they were willing and able to complete

performance of the agreement and they "were willing to and did waive the benefit of . . . [the subordination agreement.]" Respondent did not accept, and formally, in writing, rescinded the agreement on August 13, 1962.

On September 24, 1962, respondent sold the property in question for $57,760 to third persons. Appellants thereupon brought this action for specific performance or for money damages.

The trial court held that the contract was too uncertain and specifically the subordination clause thereof to enforce and found:

"(1) There occurred no breach of contract by defendant;

"(2) No valid contract existed between the parties;

"(3) That defendant have judgment against plaintiffs, together with her costs of suit herein;

"(4) That defendant forthwith return to plaintiffs the sum of One Thousand Three Hundred Fifty Dollars ($1,350.00) paid to defendant by plaintiffs, and that defendant release all claims on monies now held by escrow so that the same may be returned to plaintiffs less charges of escrow, . . . ."

Appellants concede that the subordination clause of the contract was patently ambiguous, uncertain and unenforceable. They contend, however, that this clause does not invalidate the entire contract and argue that appellants' purported waiver of the clause (treated *infra*) removes the uncertainty and renders the contract enforceable.

An agreement cannot be specifically enforced unless the terms are "sufficiently certain to make the precise act which is to be done clearly ascertainable." (Civ. Code, § 3390, subd. 5.) It must not only contain all the material terms but also express each in a reasonably definite manner. (*Magna Dev. Co.* v. *Reed,* 228 Cal.App.2d 230, 236 [39 Cal.Rptr. 284]; *Roberts* v. *Lebrain,* 113 Cal.App.2d 712, 716 [248 P.2d 810].)

Similarly, to enforce a contract at law, the offer must be sufficiently definite or must call for such definite terms in the acceptance, that the performance required is reasonably certain. (1 Witkin, Summary of Cal. Law (1960) at page 49).

At bench, it is clear that the subordination provision is neither clear nor enforceable. However, it will not void the entire agreement unless the clause is material.

The importance of certain and unambiguous terms in a subordination clause is that such terms "will define and minimize the risk that the subordinating liens will impair

or destroy the seller's security. .. . . Such terms may include limits on the use to which the proceeds may be put to insure that their use will improve the value of the land, maximum amounts so that the loans will not exceed the contemplated value of the improvements they finance, requirements that the loans do not exceed some specified percentage of the construction cost or value of the property as improved, specified amounts per square foot of construction, or other limits designed to protect the security. Without some such terms, however, the seller is forced to rely entirely on the buyer's good faith and ability as a developer to insure that he will not lose both his land and the purchase price.'' (*Handy* v. *Gordon,* 65 Cal.2d 578, 581 [55 Cal.Rptr. 769, 422 P.2d 329].) In the absence of an effective subordination clause ''. . . the contract leaves defendants with nothing but plaintiff's good faith and business judgment to insure them that they will ever receive anything for conveying their land.'' (*Handy* v. *Gordon, supra,* at page 582.)

The agreement at bench represented by the escrow instructions referred to is subject to all the infirmities referred to in the excerpt from *Handy, supra.* Detailed analysis would serve no purpose.

It is obvious therefore that subordination provisions, clear, certain and enforceable, are material and essential to the contract. (*Handy* v. *Gordon, supra*; *Magna Dev. Co.* v. *Reed, supra,* at page 238; *Gould* v. *Callan,* 127 Cal.App.2d 1, 6 [273 P.2d 93].)

Appellants argue that even if the contract is void, their agreement to eliminate and waive the subordination clause rendered the contract enforceable.

Our courts have held that ''A party to a contract cannot erase uncertainty therefrom by waiving such uncertainty and thereby restore its contractual validity.'' (*Magna Dev. Co.* v. *Reed, supra,* at page 243; see also *Klein* v. *Markarian,* 175 Cal. 37, 41 [165 P. 3] ; *Roven* v. *Miller,* 168 Cal.App.2d 391, 399-400 [335 P.2d 1035].) However, our courts also hold that a contracting party may waive provisions placed in a contract solely for his benefit. (*Wesley N. Taylor Co.* v. *Russell,* 194 Cal.App.2d 816, 828 [15 Cal.Rptr. 357] ; *Pease* v. *Brown,* 186 Cal.App.2d 425, 428 [8 Cal.Rptr. 917] ; *O'Connell* v. *Zimmerman,* 157 Cal.App.2d 330, 336 [321 P.2d 161].) The subordination provision at bench was solely for the benefit of appellants.

Assuming arguendo, therefore, that appellants could waive

the subordination, there must be a clear and valid waiver. To be valid a waiver must be a clear expression made with a full knowledge of the facts and an intent to waive the right. (*Perini* v. *Perini*, 225 Cal.App.2d 399 [37 Cal.Rptr. 354]; *Henderson* v. *Drake*, 42 Cal.2d 1, 5 [264 P.2d 921].) Doubtful cases will be decided against the one who claims a waiver. (*Perini* v. *Perini, supra*; *Roberson* v. *Industrial Acc. Com.*, 146 Cal.App.2d 627, 629 [304 P.2d 202]; *Greninger* v. *Fischer*, 81 Cal.App.2d 549, 554 [184 P.2d 694].) The alleged waiver contained in a letter sent to respondent includes the following language:

"We feel that Mr. and Mrs. Spellman are entitled to demand that Mrs. Dixon perform the contract, in which event they will waive the condition thereof calling for an automatic subordination agreement to be incorporated into the purchase money deed of trust, or in the alternative we feel that our clients are entitled to claim damages from Mrs. Dixon based upon the difference between the contract price. . . .

"This is to advise you . . . that Mr. and Mrs. Spellman stand ready, willing and able to complete performance of the agreement of sale and hereby offer to deposit into escrow the full amount of cash and all documents required of them in order to close the escrow under the terms and conditions of the escrow agreement."

The purported waiver is conditional rather than absolute. The letter further relates the purported waiver "under the terms and conditions of the escrow agreement."

Finally, what appellants meant by the language "Automatic subordination" or what form of subordination, how much and on what terms, was to be substituted for the contracted subordination, is in no way spelled out and is as much subject to attack as the subordination originally provided for. The purported waiver is itself ambiguous and misleading and is therefore ineffectual.

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.